# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **CARMEN A. VERGÈS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16CV00005 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIRGINIA HIGHLANDS COMMUNITY** | ) | By: James P. Jones |
| **COLLEGE, ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Harris D. Butler, III and Paul M. Falabella, Butler Royals, PLC, Richmond, Virginia, for Plaintiff; G. William Norris, Jr., Office of the Attorney General, Richmond, Virginia, and Katherine M. DeCoster, Office of the Attorney General, Abingdon, Virginia, for Defendants.*

The plaintiff in this case asserts claims of national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), age discrimination under 42 U.S.C. § 1983 and the Age Discrimination and Employment Act ("ADEA"), and breach of contract. Because I find that the Complaint fails to state a claim upon which relief can be granted under § 1983 or the ADEA, I will grant the Motion to Dismiss with respect to the plaintiff's age discrimination claim. However, I find that the Complaint adequately pleads claims of national origin discrimination and breach of contract, and I will deny the Motion to Dismiss as to those claims.

The Complaint alleges the following facts, which I must accept as true for purposes of deciding the Motion to Dismiss.

The plaintiff, Carmen A. Vergès, is a seventy-nine-year-old Hispanic woman of Puerto Rican origin. She began teaching at Virginia Highlands Community College ("VHCC") in 1972. VHCC is a public institution and part of the Virginia Community College System ("VCCS"). As of November, 2014, Vergès held the position of Associate Professor, was a tenured faculty member, and had a five-year appointment contract running from August, 2012, through May, 2017.

Vergès taught courses in Spanish, French, and psychology. She consistently received positive evaluations from her students and VHCC administrators, and she met or exceeded her employer's legitimate performance expectations.

Throughout most of her employment, Vergès was the only minority faculty member at VHCC. She vocally opposed VHCC's practices that had the effect of limiting minority hiring. At some unspecified time in the past, Vergès spoke with federal investigators about the lack of minority faculty members at VHCC. Just before the commencement of the federal investigation, Vergès was promoted to a

full-time faculty position and assigned to teach nursing.[1]  Vergès alleges that she was promoted "so that VHCC would have at least one minority faculty member." (Compl. ¶ 12, ECF No. 1.)  According to the Complaint, "VHCC is well aware of her view on the lack of minority representation, which has improved little through the years."  (*Id.* at ¶ 13.)

In August, 2014, VHCC had a new president, defendant Gene C. Couch, Jr. At a faculty event that month, Couch recognized Vergès and another faculty member as the longest serving professors at VHCC.  Couch mispronounced Vergès's name, and she corrected him.  Vergès alleges that Couch appeared angry at her correction.

During the fall semester of 2014, Vergès taught Abnormal Psychology and three Spanish courses.  In November, 2014, Couch informed Vergès that he was eliminating her position effective February 1, 2015.  Couch told Vergès that the decision was based on low enrollment in Spanish classes.  VHCC later stated that her position was eliminated due to budget cuts.  Vergès alleges that the true reasons for her termination were age discrimination and national origin discrimination.  In January, 2015, VHCC announced that it would host a retirement party for Vergès, despite the fact that she had no plans to retire.

---

[1]  In addition to her other areas of expertise, Vergès was a certified registered nurse.

According to the Complaint, VHCC has sufficient financial resources to fund Vergès's position, and enrollment in Spanish courses at VHCC has not decreased significantly. Because Vergès can and has taught courses in French and Psychology in addition to Spanish, she contends that lower enrollment in Spanish classes alone would not justify her termination. Moreover, since VHCC terminated Vergès, it has continued to offer a full slate of Spanish and psychology courses. Vergès alleges that when similarly situated younger, non-Hispanic and non-Puerto Rican professors have encountered low enrollment in their courses, VHCC has assigned them to teach other courses outside of their primary area of expertise.

Vergès contends that her tenured status and appointment contract provided her certain preferences, procedures, and protections from lay-off, but that the defendants disregarded those protections and procedures. Her Faculty Employment Contract ("Employment Contract"), which had been signed by Couch's predecessor in June, 2014, incorporated by reference "the general conditions of employment set forth in the VCCS Policy Manual, Virginia Highlands Community College policies, and the laws of the Commonwealth of

4

Virginia."[2]  (Br. in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. Ex. A, ECF No. 5-1 at 1.)

The VCCS policy regarding faculty appointments states, "Once a faculty member has been granted a five-year appointment, subsequent three or five multi-year renewal is presumed unless cause for discontinuance is demonstrated following review by the Ad Hoc Appointment Advisory Committee."  (*Id.*, ECF No. 5-1 at 3.)  The policy governing reduction in staff for faculty states in a footnote that "[a]ll faculty appointments are subject to a contingency of possible termination in the event there is a lack of such funds appropriated to meet all of the budgeted operating expenses of the college for the period covered by the appropriation."  (*Id.*, ECF No. 5-1 at 12.)  Under the policy, VHCC's administration "must explore all reasonable alternatives to the termination of full-time positions" before implementing a reduction in staff.  (*Id.*, ECF No. 5-1 at 9.)  The policy provides that "teaching faculty within a given discipline, teaching field, or program shall be released in order of least seniority."  (*Id.*, ECF No. 5-1 at 10.)  It further states, "Affected faculty members shall be given the right of interview for vacant permanent positions anywhere in the VCCS provided they are qualified for said positions."  (*Id.*, ECF No. 5-1 at 11.)  Moreover, the policy provides that

---

[2]  The Employment Contract is an addendum to Vergès's five-year appointment contract.  The Employment Contract governs a sub-period of one academic year, from August 16, 2014, to May 15, 2015.  The five-year appointment contract, though referenced by the parties, has not been submitted to the court.

5

"[a]ffected faculty members shall have first refusal of permanent positions should they be reestablished within the remaining term of their appointment." (*Id.*) Additionally, faculty members who are qualified to teach in fields other than their primary field "shall be placed in such a permanent position within the college provided a vacancy exists in the secondary field." (*Id.*) The policy also notes, "The termination of employment provisions outlined in the Tenure policy for administrators/ professionals holding tenure as faculty and tenured faculty take precedence over this reduction in staff procedure."[3] (*Id.*) Finally, the policy provides that "[i]ssues regarding the application of this policy may be pursued through the Faculty Grievance Procedure." (*Id.*, ECF No. 5-1 at 12.)

Count I of Vergès's Complaint asserts a Title VII claim of national origin discrimination against VHCC and VCCS. She alleges that she "was terminated from employment with VHCC because of her national origin and, on information and belief, has been replaced with non-Hispanic/non-Puerto Rican professors." (Compl. ¶ 33, ECF No. 1.) She further alleges that the "[d]efendants' actions and practices in the selection of instructors to be assigned classes, and, as a result, whose positions were eliminated, have further had a disparate impact on Plaintiff due to her national origin." (*Id.* at ¶ 32.) In other words, Vergès advances theories

---

[3] Though Vergès alleges that she was tenured and the defendants have not yet disputed that allegation, neither party has filed the referenced tenure policy.

of both disparate treatment and disparate impact discrimination.  For her Title VII claim, she seeks back pay, prejudgment interest, compensatory damages, reinstatement or front pay, attorneys' fees and costs, and expert witness fees.

Count II of the Complaint asserts a claim against Couch under 42 U.S.C. § 1983 for violation of the ADEA.  Count II seeks prospective injunctive relief in the form of reinstatement or front pay in lieu of reinstatement, as well as attorneys' fees, costs, and expert witness fees.

Count III asserts a claim of breach of contract against VHCC and VCCS. Vergès alleges that she has complied with the requirements of Va. Code § 2.2-814 and that the defendants and Comptroller of Virginia have denied her claim, satisfying the requirements of Va. Code § 8.01-192.  For her breach of contract claim, she seeks economic, compensatory, consequential, and incidental damages.

The defendants have moved to dismiss the Complaint for failure to state a claim upon which relief may be granted.  First, they assert that VHCC is not a proper party.  Second, they argue that Vergès has failed to plead a plausible claim of national origin discrimination, and that aspects of her claim are time barred. Third, they contend that the age discrimination claim is barred by sovereign immunity and foreclosed by Fourth Circuit precedent holding that a plaintiff cannot assert an age discrimination claim under § 1983.  Fourth, the defendants urge me to decline to exercise supplemental jurisdiction over the breach of contract

claim, and they further argue that Vergès's sole contractual remedy was the Faculty Grievance Procedure, which she failed to follow. These issues have been fully briefed and are ripe for decision.[4]

## II.

In order to survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. Although the court does not generally consider matters outside the pleadings upon a motion to dismiss, the court may consider documents that are referenced in the complaint. *See Goines v. Valley Cmty. Servs. Bd.*, No. 15-1589, 2016 WL

---

[4] I will dispense with oral argument because the facts and legal contentions have been adequately presented in the materials before the court and oral argument would not significantly aid in the decisional process.

2621262, at *3 (4th Cir. May 9, 2016); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## A.  Claims Against VHCC.

The defendants first assert that VHCC is not a proper party because it is merely an arm of VCCS and not a separate entity capable of being sued.

A statute designates VCCS as "the state agency with primary responsibility for coordinating workforce training at the postsecondary to the associate degree level."  Va. Code Ann. § 23-215(B).  "This responsibility shall not preclude other agencies from also providing such services as appropriate, but these activities shall be coordinated with the community colleges."  *Id.*  A separate statute requires the creation of a local community college board for each college.  Va. Code Ann. § 23-220.  "These boards shall assist in ascertaining educational needs, enlisting community involvement and support and shall perform such other duties as may be prescribed by the State Board."  *Id.*  There is no Virginia statute specifically creating VHCC or granting it the right to sue and be sued.

Though I did not locate and the parties did not cite any cases directly addressing this issue, I agree with the defendants that VHCC is not a proper defendant.  Therefore, I will grant the Motion to Dismiss as to the claims against VHCC.  Because VCCS is also named as a defendant, no substitution of parties is necessary.

B.  Title VII Claim.

As to Count I, the defendants contend that Vergès's claim of national origin discrimination should be dismissed because it does not satisfy the plausibility standard of pleading articulated in *Twombly* and *Iqbal*. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  The defendants also argue that Vergès may not base her claim on incidents occurring more than 300 days prior to the filing of her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") because allegations relating to any such incidents are time barred.

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" in order to survive a motion to dismiss. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002)). Nevertheless, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555).  Although a complaint need not contain detailed factual allegations, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A plaintiff claiming unlawful discrimination under Title VII who does not offer direct evidence of discriminatory intent has the burden of establishing that:

(1) she is a member of a protected class; (2) she was qualified for her position and her performance was satisfactory; (3) despite her qualifications, she suffered an adverse employment action; and (4) she was replaced by an individual outside of the protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Here, Vergès has alleged all of these elements and has averred facts in support of each.[5] In particular, she has stated allegations that, if true, may lead to the conclusion that her status as a Hispanic and Puerto Rican person perhaps played some role in her termination, which is enough to warrant allowing the claim to proceed to discovery. I find that she has stated a plausible claim of unlawful discrimination.

The defendants appear to concede at least the first three elements. They assert that Vergès was fired for a legitimate, nondiscriminatory reason: due to budget cuts and decreased student interest in Spanish and French classes. But a Motion to Dismiss is not a proper vehicle for considering the validity of the defendants' articulated reason for the termination. *See Ray v. Amelia Cty. Sheriff's Office*, 302 F. App'x 209, 211 (4th Cir. 2008) (unpublished) (To adequately state a

_____

[5] There may be a question as to whether Vergès will be able to carry her burden of proving national origin discrimination in light of the fact that Puerto Rico is a United States territory and its residents are born United States citizens. *See* 8 U.S.C. § 1402. Nevertheless, there is some authority that would support recognizing a claim of national origin discrimination asserted by a person of Puerto Rican descent against a United States employer. *See DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 36-37 (1st Cir. 2001); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987). In any event, in their Motion to Dismiss, the defendants have not raised any issues related to Vergès's allegation that she is a member of a protected class for purposes of Title VII.

Title VII claim, a plaintiff need not "plead facts showing that the non-discriminatory reason for termination suggested by her own complaint was pretextual"; rather, she is "required only to state her claim so as to give the defendants fair notice of its nature and the grounds upon which it rests, with enough factual allegations to state a claim to relief that is plausible, not merely speculative.")

The defendants' argument that Vergès's Title VII claim is time-barred is a specious one. The adverse employment action at issue in this case is Vergès's termination, which was effective on February 1, 2015. The defendants agree that Vergès filed her EEOC charge within 300 days of her termination. *See* 42 U.S.C.A. § 2000e-5(e)(1). The Supreme Court has held that an employee is permitted to use prior acts of discrimination as "background evidence" in support of a timely claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Vergès's Title VII claim is not time-barred.

## C. Age Discrimination Claim.

The defendants also move to dismiss Vergès's age discrimination claim because they assert that Couch is entitled to immunity and a plaintiff cannot assert an age discrimination claim under 42 U.S.C. § 1983. There is no need to address

the immunity argument, because the defendants are correct that Vergès cannot use § 1983 to assert a claim for violation of the ADEA.

An ADEA claim can only be asserted against an employer, not an individual supervisor. *See, e.g., Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (unpublished) (noting that the ADEA does not provide for a cause of action against a defendant in his individual capacity); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Congress has not validly abrogated the states' sovereign immunity with respect to ADEA claims. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000). Therefore, Vergès's state agency employer, VCCS, is immune from any suit for damages under the ADEA unless it consents to be sued.

Vergès has attempted to avoid this problem by asserting a § 1983 claim against Couch individually for prospective injunctive relief under the doctrine articulated in *Ex Parte Young*, 209 U.S. 123 (1908). That doctrine generally allows such a suit against a state official to stop a continuing violation of federal law. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). But the Supreme Court has held that where Congress has created a detailed statutory remedial scheme, a plaintiff is not permitted to get around that scheme by bringing a claim under § 1983 instead. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73-74 (1996). And the Fourth Circuit has expressly held that the ADEA is such a comprehensive statutory remedial scheme. *Zombro v. Balt. City Police Dep't*, 868 F.2d 1364,

13

1366-67 (4th Cir. 1989). Therefore, the Fourth Circuit has concluded that a plaintiff may not assert an age discrimination claim under § 1983, regardless of whether that claim is based on an alleged violation of a constitutional right, such as the Fourteenth Amendment's equal protection clause, or whether it is based on the ADEA itself. *Id.* at 1368-69. As such, I must dismiss Count II of the Complaint.

I recognize that this result leaves public employees like Vergès without a federal remedy for alleged age discrimination in employment. That is an unfortunate consequence, but one that only Congress can rectify. I am bound to apply the law as set forth by the Fourth Circuit and the Supreme Court, and they have spoken on this issue, thereby foreclosing any order commanding reinstatement of a public employee who has been terminated because of her age.

D. Breach of Contract.

The defendants next urge me to dismiss Count III of the Complaint because Vergès did not avail herself of the Faculty Grievance Procedure. But the reduction in staff for faculty policy states that "[i]ssues regarding the application of this policy *may* be pursued through the Faculty Grievance Procedure." (Br. in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. Ex. A, ECF No. 5-1 at 12 (emphasis added).) "May" does not mean "must." I have not located any contractual provision, statute, regulation, or case law indicating that Vergès was required to use the

14

Faculty Grievance Procedure or that the procedure is her exclusive remedy for claims arising out of her appointment contract.

The defendants ask me to decline to exercise supplemental jurisdiction over the state law breach of contract claim. *See* 28 U.S.C. § 1367(c)(3). Because the Motion to Dismiss will be denied as to Vergès's Title VII claim, I will retain jurisdiction over the breach of contract claim and will deny the Motion to Dismiss with respect to Count III.

III.

For the foregoing reasons, it is **ORDERED** that the Motion to Dismiss (ECF No. 4) is GRANTED IN PART and DENIED IN PART. Count II of the Complaint is DISMISSED with prejudice and defendants Virginia Highlands Community College and Dr. Gene C. Couch, Jr., are DISMISSED as parties to this action.

ENTER: May 25, 2016

/s/ James P. Jones
United States District Judge